HARTZ, Circuit Judge,
dissenting:
I respectfully dissent. I have no quarrel with the panel opinion’s explication of the governing law and I do not rest my dissent on any disagreement with the panel opinion’s analysis regarding the relevance of Mr. Smith’s prior conviction (although defense counsel could properly have been concerned that Smith could be impeached by the conviction and that Mr. Holder may have looked less than pristine to the jury for associating with a convicted felon). Rather, I believe that it would have been objectively reasonable, indeed eminently reasonable, for defense counsel not to call Smith as a witness because a jury would be likely to view his testimony as indicating Holder’s guilt.
The chief benefit to Holder of Smith’s testimony would have been Smith’s corroboration of Holder’s testimony that Pickens drew his gun. Smith, however, was not looking at Holder at that time and could not have known whether Pickens was responding to some aggressive action by Holder, such as raising his shotgun to aim at Pickens, or was the first to act. Because Smith had no idea what Holder had been doing, Smith was merely speculating when he testified to the grand jury that Holder had only done what he had to.
I would think that Smith’s testimony would be at least as important, and probably more so, regarding whether it was Holder or Pickens who was more likely the initial aggressor. And on that issue his testimony would be harmful to Holder. Contrary to Holder’s testimony, and consistent with Swift’s, Smith’s account indicates that it was Holder who was the
angry one when Holder and Pickens faced each other.
First, Smith explained the circumstances that led to Holder’s heightened emotions. According to Smith, as he and Holder were riding on horseback along the fence before they saw Pickens or his vehicle, Holder had noted a break in the fence and had commented that “they” had cut his fence again. The two then saw a vehicle, which had a gun, perhaps an assault rifle, inside it.
Second, Smith’s grand jury testimony suggests, contrary to Holder’s trial testimony, that Smith prepared to shoot Pick-ens (or whoever had been in the vehicle parked near the fence) as Smith and Holder continued past the vehicle. Although Holder testified that he had taken his gun out of its scabbard when he crossed a creek (a wholly “innocent” act), Smith testified that Holder’s shotgun was in the scabbard when the two came upon the vehicle. Smith then took the lead and did not see when Holder, traveling behind him, removed the gun; but it had to have been after Holder realized that he was about to come across someone who likely had cut his fence. Also, although Holder testified that he had loaded the shotgun only after Pickens had drawn his gun, Smith testified that he did not hear Holder load the shotgun after they confronted Pickens. As Smith said, “I know that may look bad but I didn’t hear it.” R. Vol. 1 at 271. If Smith is correct, then Holder’s gun was loaded at the start of the ride or Holder loaded it as he and Smith approached the others.
Third, although Holder testified that Pickens was “a rambling and a raging and slinging his hands and cursing” when Holder encountered him, Smith’s testimony described Pickens as civil and Holder *874 as the only angry one. His account of the encounter was as follows:
I just — I greeted them, I throwed up my hands just like you meet people in my country there. How are you all doing? I can’t think of everything I said. I think I might have said even something about the weather and different things like that. And just as soon as I ended that, Fred spoke right up.
R. Vol. 1 at 231.
A. Well, just as soon as I got done greeting them, just like you greet anybody in that country—
Q. And at this point in time, it’s a friendly exchange between you and Mr. Pickens, is that a fair statement?
A. Yes, sir. I guess. They spoke to me. Nothing out of the way, you know.
Q. What happened at that point?
A. Just as soon as I ended, Fred spoke up behind me.
Q. What did Fred say?
A. He said, you cut my fence again, didn’t you? And the man said, no, I didn’t.
Id. at 235. According to Smith, the shooting occurred promptly after Holder’s accusation:
And then right after that, just kind of as soon as he said no, I didn’t, I seen him reach with his right hand back. And then there was a little bit of a hesitation, I don’t know what, and then he jerked out a gun. I didn’t know if his arm was extended. And just as soon as he jerked it out — it all happened just like that — Fred shot. It just happened just like that.

Id.

Smith’s testimony suggests not only that Holder was the aggressor, but also that Holder lied about the nature of the confrontation by falsely asserting that Pickens was angrily ranting and that he did not even load his gun until Pickens drew his. A jury could infer that Holder was lying to conceal his aggressive act. A reasonable defense attorney could quite properly decide that Smith’s testimony would be more harmful than helpful to the defense.
In my view, we must reverse the district court judgment because Holder has not established ineffective assistance of counsel.